IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Michael Anthony Prozer, III, | ) | |
| | ) | Civil Action No. 9:14-1249-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

      Michael Anthony Prozer, III, the plaintiff, brings this action against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*. The United States filed a motion for summary judgment (ECF 19), and Prozer responded to that motion (ECF No. 23). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this matter was referred to a magistrate judge for pretrial handling. This case is now before the court on the magistrate judge's Report and Recommendation ("Report"), recommending the court to grant the motion for summary judgment. (ECF No. 32). Prozer filed timely objections. (ECF No. 35). He also filed a notice of continued harassment after his objections, which the court has construed as an additional objection. (ECF No. 37).

      The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). In making that determination, the court is charged with conducting a de novo review of those portions of the Report to which either party specifically objects. *See* 28 U.S.C. § 636(b)(1). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. *See id.*

1

Summary judgment is appropriate if, after reviewing the entire record in a case, the court is satisfied that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under the governing substantive law. *Id*.

"The party moving for summary judgment has the [initial] burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992). Thereafter, the party opposing summary judgment must come forth with "sufficient evidence supporting the claimed factual dispute," and cannot "rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 247. Therefore, "[a]lthough the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). In sum, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co*, 475 U.S. at 587 (*Cities Serv. Co.*, 391 U.S. at 289)).

The FTCA waives sovereign immunity and imposes tort liability on the United States "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, the court must analyze Prozer's FTCA claims under South Carolina law.

2

*See* 28 U.S.C. § 1346(b)(1).  To prove negligence in South Carolina, a plaintiff must show: "(1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty."  *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000) (citation omitted).

Although Prozer's objections are lengthy and detailed, they mostly refer to alleged fraud or lies in the affidavits provided by the United States.  (ECF No. 35, at 1-13, 16-17, 19); *see Jones v. Hendricks*, 173 F. App'x 180, 183 (3d Cir. 2006) (rejecting similar argument because the inmate "provided no support for his assertions that . . . the prison's documents were falsified").  The court will examine the two parts of the Report that Prozer specifically objected to: (1) medical negligence and (2) the invasion of privacy/defamation claims.

### I.     Medical Negligence

Prozer objects to the magistrate requiring him to provide an expert statement to institute his lawsuit.  (ECF No. 35, at 14-15).  The magistrate judge stated, in a footnote, that Prozer failed to file the expert witness affidavit.  (ECF No. 32, at 32).

In a medical malpractice case, the Plaintiff must prove:

(a) What the recognized and generally accepted standards, practices and procedures are in the community which would be exercised by competent physicians in the same specialty under similar circumstances.
(b) The physician or physicians and/or hospital personnel in question negligently deviated from the generally accepted standards, practices, and procedures.
(c) Such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury.
(d) The plaintiff was injured.

*Dumont v. United States*, 80 F. Supp. 2d 576, 581 (D.S.C. 2000) (citations omitted).  South Carolina also has an affidavit requirement that plaintiffs must comply with when instituting a medical malpractice suit:

3

> . . . in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G) or against any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of South Carolina and listed in subsection (G), the plaintiff must file as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim . . . .

S.C. Code § 15-36-100(B). Failure to file the affidavit subjects the complaint to dismissal. *Id.* at (C)(1). The affidavit requirement is part of the substantive law of medical malpractice in South Carolina and is not procedural. *E.g.*, *Rotureau v. Chaplin*, No. 2:09-cv-1388, 2009 WL 5195968, at *6 (D.S.C. Dec. 21, 2009).

Prozer does not contest the foregoing, but rather he argues that the United States is neither a professional licensed or registered nor a health care facility licensed or registered in South Carolina, and, therefore, the affidavit requirement is inapplicable. (ECF No. 35, at 14-15). Even assuming *arguendo* that a federal inmate suing the United States does not have to comply with the expert affidavit requirement to file his lawsuit, Prozer's claims still fail because the medical records on file and accurately summarized by the magistrate judge reveal that Prozer was provided with adequate and reasonable medical care.

To meet its burden on the summary judgment motion, the United States provided Prozer's medical records and an affidavit of a physician, Dr. Ivan Negron, employed by the Federal Bureau of Prisons, who currently serves as the Medical Director for the Southeast Region. The medical records show that Prozer received medical attention on August 1, 2013. (ECF No. 19-3, at 5-6). He stated that nothing hurt and that he did not lose consciousness. (ECF No. 19-3, at 5). Prozer was seen again on August 26, 2013, where he indicated his nose hurt and he was in pain. (ECF No. 19-3, at 8-10). The medical professionals ordered an x-ray exam, which was performed on August 30th. (ECF No. 19-3, at 9-11). The x-ray revealed that Prozer

had a fractured nose. (ECF No. 19-3, at 11). On September 12, 2013, Prozer returned for a follow up concerning the x-ray. (ECF No. 19-3, at 12-14). The medical provider informed Prozer that no medical treatment was necessary for his nose, and that his nose would recover naturally. (ECF No. 19-3, at 12). During the meeting, Prozer informed the medical provider that he had something on the back of his head due to the alteration, and additional x-rays were ordered. (ECF No. 19-3, at 12-14). Prozer received medical care again on September 19th, due to complaints of dizziness and unsteadiness. (ECF No. 19-3, at 15-17). The doctor prescribed him medicine for the dizziness, and the doctor also ordered a CT scan for the injuries to Prozer's head. (ECF No. 19-3, at 17). On September 30th, the CT scan was performed. (ECF No. 19-3, at 18). Prozer met with medical professionals again on October 3, 2013, where another x-ray was ordered and he was advised to get pain medication from the commissary. (ECF No. 19-3, at 20-21). On October 11th, Prozer underwent another x-ray. (ECF No. 19-3, at 22-23). In summarizing the medical records, Dr. Negron's affidavit states that this medical attention met the standard of care:

> The medical care provided to Mr. Prozer following his assault was timely, appropriate, and evidence based proven effective medical treatment in accordance with approved policies. There is nothing different that could have, or should have, been done in relation to the injuries reported by Mr. Prozer, and diagnosed by the FCI Estill medical staff.

(ECF No. 19-3, at 3). Accordingly, the United States met its burden. *See Catawba Indian Tribe of S.C.*, 978 F.2d at 1339 ("The party moving for summary judgment has the [initial] burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.").

Prozer argues that the medical testimony was false. *See* (ECF No. 35). He provides no medical testimony showing that it is false, other than his lay opinion. *See Dumont v. United*

5

*States*, 80 F. Supp. 2d 576, 581 (D.S.C. 2000) (rejecting lay opinion when it contradicts the expert evidence). Moreover, even assuming that he did not need an affidavit from an expert to file this lawsuit, Prozer is incapable of establishing medical malpractice, in this instance, without expert testimony. *See Pederson v. Gould*, 341 S.E.2d 633, 634 (S.C. 1986) (citation omitted).

"In medical malpractice actions, the plaintiff must use expert testimony to establish both the required standard of care and the defendant's failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant." *Id.* Here, the subject matter is not one that can be evaluated based on common knowledge and experience. In his initial brief, Prozer makes many assertions that he considers failures to meet the standard of care. (ECF No. 23). Prozer first challenges whether Nurse Crosby used proper procedure in evaluating his "significant head and facial trauma injuries," asserting that Nurse Crosby did not meet the level of care required. (ECF No. 23, p.at 26). He argues that an x-ray should have been ordered when a patient has "[b]oth eyes severely blackened, nose broken, cuts, contusions, and significant damage to the back of Plaintiff's head," (ECF No. 23, at 15), yet he provides no basis as to whether an x-ray should be ordered when the patient indicates he is in no pain and did not lose consciousness (ECF No. 19-3, at 5). Prozer lacks the capacity to establish how to evaluate significant head and facial trauma injuries, or what standards are used for determining whether to order an x-ray for a patient.

Perhaps realizing this, Prozer attached to his Sur-Reply the purported scope of services policy from the Bureau of Prisons. (ECF No. 30-1, at 1). That document states, in pertinent part:

> Medical Necessary – Acute or Emergent. Medical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid

6

> deterioration of the inmate's health, significant irreversible loss of function, or may be life-threatening.
> Examples of conditions considered acute or emergent include, but are not limited to:
>     . . .
> Severe trauma such as head injuries.

(ECF No. 30-1, at 1). Prozer received immediate medical attention on August 1, 2013. (ECF No. 19-3, at 5-6). Without medical testimony stating otherwise, the court cannot determine if the treatment provided on August 1, 2013, was below the standard of care. The same is true with regard to Prozer's requests to staff. (ECF No. 30-1, at 3-5). The requests to staff do not establish a medical malpractice claim because no medical care was provided.[1] Accordingly, the court finds that the Report properly recommended that summary judgment be granted on this count in favor of the United States.

## II. Invasion of Privacy/Defamation

Prozer failed to object to the portion of the Report granting summary judgment to the United States on the invasion of privacy claims. (ECF No. 35). Prozer, however, filed a "notice of continued harassment" (hereinafter "notice") after filing his objections, which discussed this portion of the Report. (ECF No. 37). Because of his *pro se* status, the court construed this notice as an objection.

The magistrate judge granted summary judgment in favor of the United States on the invasion of privacy/defamation claims because, in part, Prozer did not identify when or where it happened, who was involved, or what allegedly private information was obtained and/or what defamatory statements or information have been made or shared about him. (ECF No. 32, at 34).

---

[1] This court expresses no opinion as to whether the requests to staff could establish a cognizable claim pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Although this claim sounds in *Bivens*, Prozer explicitly brought this action under the FTCA, and repeatedly referenced his claims as tort claims, not constitutional violations. (ECF Nos. 1, 1-1, 23). Moreover, the suit was brought against only the United States and not any of its employees. (ECF No. 1).

7

In his notice, Prozer states that on October 9, 2014, between 8:30 and 9:00 a.m., he caught Officer Keppel Googling his name. (ECF No. 37). Nonetheless, the court finds that Prozer fails to create a genuine issue of material fact.

Under South Carolina law, three causes of action fall under the category of invasion of privacy: "(1) wrongful appropriation of personality; (2) wrongful publicizing of private affairs; and (3) wrongful intrusion into private affairs." *Snakenberg v. Hartford Cas. Ins. Co., Inc.*, 383 S.E.2d 2, 5 (S.C. Ct. App. 1989) (citations omitted). "Wrongful appropriation of personality involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit." *Id.* "The gist of the action is the violation of the plaintiff's exclusive right at common law to publicize and profit from his name, likeness, and other aspects of personal identity." *Id.* at 5-6. Wrongful intrusion into private affairs requires proof of four elements: (1) an intrusion; (2) into that which is private; (3) the intrusion was substantial and unreasonable enough to be legally cognizable; and (4) the intrusion was intentional. *Id.* at 6 (citations omitted). Wrongful publicizing of private affairs is a "public disclosure of private facts about the plaintiff." *Id.*

All of those invasions of privacy claims, except wrongful appropriation of personality, require that the information be private. If the information can be discovered through a basic Google search, it has already been made public. Also, because of Prozer's status as an actor on a reality television show, he "los[t] to some extent the right of privacy that otherwise would be his." *Meetze v. Assoc. Press*, 95 S.E.2d 606, 609 (S.C. 1956). Moreover, as to the wrongful appropriation of personality claim, Prozer has not provided any evidence that Officer Keppel used his name, likeness, or identity to profit. Therefore, the court finds that summary judgment should be granted to the United States on Prozer's invasion of privacy claims.

Likewise, Prozer's claim for defamation fails. "In order to prove defamation, the complaining party must show: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002) (citations omitted). Prozer provides no information that Officer Keppel published the information, nor what the false and defamatory statement was that she said. Therefore, the court grants summary judgment to the United States on the defamation count.

## Conclusion

Accordingly, the court adopts the Magistrate Judge's Report (ECF No. 32) and incorporates it herein. It is therefore **ORDERED** that the United States's motion for summary judgment (ECF No. 19) be **GRANTED**, and that the case be **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

November 25, 2014
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.